**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LOREN ERIC GIBSON,          )
        **Plaintiff,**      )
                       )      **Civil Action No. 10-392**
                       )      **Electronically Filed**
**v.**                         )
                       )
**MICHAEL J. ASTRUE,**       )
**COMMISSIONER OF SOCIAL SECURITY,**  )
        **Defendant.**      )

## MEMORANDUM OPINION

**I.**     **Introduction**

Plaintiff Loren Eric Gibson ("Gibson") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings.  Doc. Nos. 7 & 9.

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the entire evidentiary record, the Court concludes that the Commissioner's decision must be vacated, and that the case must be remanded for further proceedings pursuant to the fourth sentence of § 405(g).  Therefore, the Court will deny the Commissioner's motion for summary judgment, deny Gibson's motion for summary judgment to the extent that it requests

an award of benefits, and grant Gibson's motion for summary judgment to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings.

## II.     Procedural History

Gibson initially applied for DIB and SSI benefits on October 22, 2004, alleging that he had become disabled on October 2, 2003.  R. 12.  The claims proceeded through the administrative process and were ultimately denied in a decision dated March 20, 2007.  R. 12. Gibson took no further action with respect to those applications.  R. 12.

Gibson protectively applied for DIB and SSI benefits on February 14, 2008, alleging disability as of April 1, 2007.  R. 106.  The applications were administratively denied on April 16, 2008.  R. 76, 80.  Gibson responded by filing a timely request for an administrative hearing. On July 20, 2009, a hearing was held before Administrative Law Judge James Bukes (the "ALJ").  R. 50.  Gibson, who was represented by counsel, appeared and testified at the hearing. R. 52-68.  Samuel Edelman ("Edelman"), an impartial vocational expert, also testified at the hearing.  R. 69-71.

In a decision dated August 21, 2009, the ALJ determined that Gibson was not "disabled" within the meaning of the Act.  R. 9-30.  The Appeals Council denied Gibson's request for review on February 3, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. 1.  Gibson commenced this action on March 24, 2010, seeking judicial review of the Commissioner's decision.  Doc. No. 1.  Gibson and the Commissioner filed cross-motions for summary judgment on July 20, 2010.  Doc. Nos. 7 & 9.  These motions are the subject of this memorandum opinion.

## III.    Statement of the Case

In his decision, the ALJ made the following findings:

1. The claimant the met insured status requirements of the Social Security Act through March 30, 2009 (Exhibit 2D).

2. The claimant has not engaged in substantial gainful activity since April 1, 2007, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe mental impairments: bipolar affective disorder and drug (cocaine) and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, the claimant's [sic] residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he must avoid hazards such as moving machinery. In addition, he is limited to simple instructions, and should avoid extensive supervision, changes in the work setting, and assembly line pace work. Moreover, he would have difficulty maintaining regular attendance, would on average miss more than three days per month from work, and would be incapable of handling any stress in the work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was 35 years old on the alleged disability onset date and defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has the equivalent of a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (Vocational expert testimony; 20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities;

therefore, the claimant would continue to have a severe impairment or combination of impairments.

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

13. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he must avoid hazards such as moving machinery. In addition, he is limited to simple instructions, and should avoid extensive supervision, changes in the work setting, and assembly line pace work.

14. If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Pubpart P, Appendix 2).

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

17. Because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 416.920(g)), the claimant's substance use disorders is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

R. 16-30. Gibson argues that the ALJ erred in determining that his substance abuse was "a contributing factor material to the determination of disability."

## IV.      Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3).[2]  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir.2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir.1983).  The district court's function is to determine whether

---

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . .brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

the record, as a whole, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir.1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir.2002), quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) ("The District Court, apparently recognizing the ALJ's failure to

consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' " Id. at 87; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir .1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied . . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant

fails to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work . . . .
If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step...

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).  *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)).  If the claimant satisfies step 3, she is considered per se disabled.  If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20

C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983);

*Stunkard*, 841 F.2d at 59; *Kangas,* 823 F.2d at 777 (Steps 1-3); or,

       (2) in the event that the claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461

(citing 42 U.S.C. § 423(d)(2)(A)). In order to prove disability under this second method, a

plaintiff must first demonstrate the existence of a medically determinable disability that

precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at

59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her

previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the

plaintiff's mental or physical limitations, age, education and work experience, he or she is able to

perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461

U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

       Vocational Expert-Hypothetical Questions

       The determination of whether a claimant retains the residual function capacity

(hereinafter "RFC") to perform jobs existing in the workforce at step 5 is frequently based in

large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553,

citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984)(citations omitted). Where a

hypothetical question to the VE accurately sets forth all of a claimant's significant impairments

and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on

the medical record, the expert's response as to the existence of jobs in the national economy

which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's finding of non-disability at the fifth step of the sequential evaluation process. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir.1987) (leading cases on the use of hypothetical questions to VEs).[3] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.' ") Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles (hereinafter "DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir.2002); *see also Id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to

---

[3] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*,745 F.2d at 218.

address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,' "), *citing* 42 U.S.C. § 423(d)(2)(c), and 20 C.F.R. §§ 404.1523, 416.923). Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971). To that end, the ALJ may not just

make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found that a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli v. Halter*, 247 F.3d 34, 40 n. 4 (3d Cir. 2001), *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d. Cir. 1985).

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ cannot simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir.1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d

Cir.1979). Similarly, an ALJ must give great weight to a claimant's subjective description of an inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir.1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir.1999).

But, if an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green*, 749 F.2d at 1070- 71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor

the ALJ may discount the claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir.1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D.Pa.1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d Cir.1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112,119-20 (3d Cir.2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose

whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317,

*quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all

medical findings that support a treating physician's assessment that a claimant is disabled, and

can only reject a treating physician's opinion on the basis of contradictory medical evidence, not

on the ALJ's own credibility judgments, speculation or lay opinion. *Morales v. Apfel*, 225 F.3d

310, 317-18 (3d Cir. 2000)(citations omitted).

Moreover, the Commissioner/ALJ:

> must "explicitly" weigh all relevant, probative and available evidence . . . .
> [and] must provide some explanation for a rejection of probative evidence
> which would suggest a contrary disposition . . . . The [Commissioner] may
> properly accept some parts of the medical evidence and reject other parts, but
> she must consider all the evidence and *give some reason for discounting* the
> evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-

43(although an ALJ may weigh conflicting medical and other evidence, he or she must give

some indication of the evidence that he or she rejects and explain the reasons for discounting the

evidence; where an ALJ failed to mention significant contradictory evidence or findings, the

Court was left to wonder whether he considered and rejected them, or failed to consider them at

all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence

consistent with the requirements of the applicable regulations and the law of this circuit...."); 

*Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must

consider all evidence before him . . . . Although the ALJ may weigh the credibility of the

evidence, he must give some indication of the evidence which he rejects and his reason(s) for

discounting such evidence . . . . 'In the absence of such an indication, the reviewing court cannot

tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir.1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. § 404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. § 404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. § 404.1527(b), (d) (2002).[4]  Medical opinions on matters

reserved for the Commissioner are not entitled to "any special significance," although they must

always be considered. 20 C.F.R. § 404.1527(e)(1-2) (2002). The Commissioner's Social Security

Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling

Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling,

Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain

in some detail the distinction between medical opinions entitled to controlling weight and those

reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

to controlling weight does not mean that the opinion is rejected.  It may still be entitled to

---

[4] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will
evaluate every medical opinion we receive. Unless we give a treating source's opinion
controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in
deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d) (2002).
Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since
> these sources are likely to be the medical professionals most able to provide a
> detailed, longitudinal picture of your medical impairment(s) and may bring a
> unique perspective to the medical evidence that cannot be obtained from the
> objective medical findings alone or from reports of individual examinations, such
> as consultative examinations or brief hospitalizations. If we find that a treating
> source's opinion on the issue(s) of the nature and severity of your impairment(s) is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other substantial evidence in your case
> record, we will give it controlling weight. When we do not give the treating
> source's opinion controlling weight, we apply the factors listed in paragraphs
> (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3)
> through (d) (6) of this section in determining the weight to give the opinion. *We
> will always give good reasons in our notice of determination or decision for the
> weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored . . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527(d)(1- 6).

State Agency Medical and Psychological Consultants

---

[5] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527(f)(2)(i). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

## V.     Discussion

Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended Titles II and XVI to provide that "an individual shall not be considered to be disabled" under the Social Security Act if "alcoholism or drug addiction" would be "a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations implementing the statutory mandate of the CWAAA. 20 C.F.R. §§ 404.1535, 416.935. Under the applicable regulations, the critical question is whether a claimant who is disabled as a result (or *partially* as a result) of drug or alcohol use would remain disabled if he or she were to stop using those substances. 20 C.F.R.

§§ 404.1535(b)(1), 416.935(b)(1). If the claimant's disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to an award of benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). Conversely, if a claimant's disability would not remain in the absence of drug or alcohol abuse, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

Under the Commissioner's regulations, a "materiality" inquiry must be preceded by a determination that the claimant's impairments (including those which would not persist after the cessation of substance abuse) render him or her unable to engage in substantial gainful activity. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003); *Bustamante v. Massanari*, 262 F.3d 949, 954-955 (9th Cir. 2001). In this case, the ALJ determined that Gibson was unable to meet the demands of competitive work when he was actively using drugs or alcohol. R. 19-20. He went on to conclude that Gibson's substance abuse was "a contributing factor material to the determination of disability," thereby requiring the denial of Gibson's applications for benefits. R. 30. The only question before the Court is whether this finding of "materiality" is "supported by substantial evidence."

A materiality inquiry centers on which functional limitations would remain if the claimant were to stop using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). For this reason, a careful analysis of the ALJ's alternative residual functional capacity findings is required. The ALJ concluded that Gibson was limited to a range of "light"[6] work requiring him to follow only simple instructions and involving no hazards such as moving machinery, no

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

extensive supervision, no changes in the work setting, and no assembly line pace work. R. 19, 23. The ALJ determined that these limitations would remain with Gibson even if he were to avoid all substance abuse. R. 23. The ALJ further determined that Gibson would have difficulty maintaining regular attendance at work, would miss more than three days of work per month, and would be incapable of handling any type of work-related stress when he was actively using drugs and alcohol. R. 19-20. At the hearing, Edleman testified that no jobs existed in significant numbers in the national economy for an individual who needed to miss work more than three times per month. R. 70. In response to a question posed by Gibson's counsel, Edleman testified that no jobs existed for an individual who was "capable of handling no stress whatsoever."[7] R. 70-71. The relevant factual issue is whether "substantial evidence" supports the ALJ's finding that Gibson would not have these particular limitations if he were to stop using drugs and alcohol.

The United States Court of Appeals for the Third Circuit has not decided which party bears the burden of proving materiality (or lack of materiality) when the record indicates that an otherwise "disabled" claimant uses drugs or alcohol. *McGill v. Commissioner of Social Security*, 288 Fed.Appx. 50, 52 (3d Cir. 2008). Nonetheless, four Courts of Appeals have held that this burden of proof rests with the claimant. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Where a claimant produces

---

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003)(footnoted omitted). This burden is commonly satisfied by means of vocational expert testimony. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

evidence of non-materiality, an administrative finding of materiality must be based on some form of medical evidence, and not simply on pure speculation about the effect that drug and alcohol abuse has on the claimant's ability to work. *Sklenar v. Barnhart*, 195 F.Supp.2d 696, 699-706 (W.D.Pa. 2002).

It is undisputed that the administrative record in this case had the requisite degree of evidence concerning Gibson's "drug addiction" and "alcoholism" to trigger his burden of establishing non-materiality. 20 C.F.R. §§ 404.1535(a), 416.935(a). Indeed, Gibson affirmatively listed "substance abuse" and "dependency" as impairments when he applied for DIB and SSI benefits. R. 110. In an attempt to prove non-materiality, Gibson presented a letter from his primary care physician, Dr. Seth Rubin, dated March 23, 2009. R. 247. In that letter, Dr. Rubin stated:

> I am writing on behalf of my patient, Loren E. Gibson. He suffers type II diabetes mellitus, hypertension, hyperlipidemia, bipolar disorder, alcohol and substance abuse. In my best medical opinion, he is totally disabled as a result of the diabetes and bipolar disorder. Mr. Gibson finds it difficult to manage his mood and remain adherent to medical advice as a result of his difficult to control [sic] bipolar disorder. Drug and alcohol use is not a primary cause of his disability, but it does play a significant secondary role in exacerbating his bipolar disorder and therefore the diabetes.

R. 247. Although Dr. Rubin acknowledged that Gibson's substance abuse had exacerbated his bipolar disorder and diabetes, he evidently believed that Gibson would remain disabled even if he were to stop using drugs and alcohol.[8]

_____

[8] When he applied for DIB and SSI benefits, Gibson did not allege that he was disabled because of physical impairments. R. 110. The ALJ observed in his opinion that no state agency physician had evaluated the effect that Gibson's diabetes had on his ability to work, since he had not mentioned diabetes as an impairment. R. 25. Nevertheless, the

On July 2, 2009, Dr. Rubin completed an "impairment questionnaire" concerning Gibson's psychiatric impairments. R. 278-285. Among other things, Dr. Rubin opined that Gibson was incapable of enduring even a "low stress" environment, that he would need to miss work more than three times per month, and that these limitations would last for at least twelve months.[9] R. 284-285. Nonetheless, Dr. Rubin affirmatively acknowledged that he did not have access to Gibson's psychiatric treatment records. R. 278, 280. Indeed, Dr. Rubin did not even know whether Gibson had been hospitalized for psychiatric reasons. R. 280.

Dr. Joshua Frank, Gibson's treating psychiatrist, completed an "impairment questionnaire" on July 14, 2009. R. 287-294. Dr. Frank reported, *inter alia*, that Gibson was incapable of dealing with even "low stress" situations, that he would need to miss more than three days of work per month, and that these limitations were expected to last for at least twelve months. R. 293-294. Dr. Frank did not render an opinion concerning the extent to which Gibson's limitations were attributable to drug and alcohol use. Nevertheless, he described "stress" as a "relapse trigger" for Gibson's bipolar disorder and resulting depression. R. 293.

The record indicates that Gibson was hospitalized at the University of Pittsburgh Medical Center's ("UPMC") Shadyside facility ("UPMC Shadyside") on February 1, 2008, after attempting to commit suicide. R. 146-176. He had consumed excessive amounts of Tylenol and Percocet after ingesting large amounts of cocaine. R. 146. Gibson was transferred to UMPC's

---

ALJ accommodated the limitations caused by Gibson's diabetes by determining that he could perform only a range of "light" work that was not performed in close proximity to moving machinery. R. 25.

[9] In order for a claimant to be statutorily disabled, *both* his or her medically determinable impairment *and* his or her inability to work must last (or be expected to last) for a continuous twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002).

Braddock facility ("UMPC Braddock") on February 4, 2008.[10]  While at UPMC Braddock, Gibson reported that he had started to consume cocaine and alcohol two weeks earlier after having avoided those substances for roughly three and a half years.  R. 182.  He had apparently consumed $500.00 worth of cocaine shortly before his suicide attempt.  R. 183.  Gibson was discharged from UPMC Braddock on February 7, 2008.  R. 178-179.

Treatment notes provided by UPMC Shadyside's Family Health Center indicate that, two weeks after his discharge, Gibson was still using cocaine.  R. 223.  His cocaine use evidently affected his appetite, since his medical records state that he was not consuming "regular meals" while using cocaine.  R. 223.  Gibson later sought treatment at UPMC's Western Psychiatric Institute and Clinic ("WPIC").  On March 31, 2008, Gibson told Dr. Shakeel Ahmed Khan, a treating physician affiliated with WPIC, that he had not consumed drugs or alcohol since February 16, 2008.  R. 271.  The documentary record indicates that Gibson was hospitalized from August 27, 2008, through September 18, 2008.  R. 265.  WPIC personnel authorized the

---

[10] It is not entirely clear from the record exactly when Gibson's hospitalization became involuntary.  A treatment note from UPMC Shadyside states that Gibson was "voluntarily" admitted to the facility on February 1, 2008.  R. 150.  Pennsylvania law provides for the "voluntary" admission of psychiatric patients who are willing to undergo treatment on an inpatient basis.  50 P.S. § 7201.  Nevertheless, a treatment note provided by UPMC Braddock indicates that Gibson had been "involuntary" committed pursuant to a petition filed by his wife.  R. 178.  Pennsylvania law provides for the "involuntary" commitment of individuals who are "severely mentally disabled and in need of immediate treatment."  50 P.S. § 7301(a).  Any "responsible party" can submit a written application to a county administrator seeking a warrant for the emergency examination of a person believed to be "severely mentally disabled and in need of immediate treatment."  50 P.S. § 7302(a)(1).  Any involuntary detention of a mentally ill individual in excess of 120 hours must be judicially authorized pursuant to 50 P.S. § 7303.  The record indicates that a petition for extended involuntary treatment was filed when Gibson was hospitalized at UPMC Braddock.  R. 178.  Gibson was discharged from UPMC Braddock on February 7, 2008.  R. 178-179.  While it is clear that Gibson was hospitalized for a total of six days, it is not clear when his "voluntary" admission became an "involuntary" commitment.

release of information pertaining to that hospitalization, but Gibson never submitted it to the ALJ.  R. 27, 265.

Gibson stopped working on April 1, 2007.  R. 110.  He had been working as an "oil changer" for Ashland Oil/Valvoline for the previous eight months.  R. 54-56.  At the hearing, Gibson testified that he had stopped working because of his inability to get along with a co-worker.  R. 63.  He explained that he had spent most of his time inside of his bedroom shortly after leaving his job.  R. 64.  He also testified that he had not been using drugs or alcohol at that time.  R. 63.

The ALJ did not deem Gibson to be a credible witness.  R. 23.  He rejected Dr. Rubin's opinion of non-materiality because it had been made without reference to Gibson's psychiatric treatment records.  R. 28.  Moreover, the ALJ disregarded Dr. Frank's reference to "stress" as a "relapse trigger" on the ground that it had not been accompanied by supporting "treatment notes or reports."  R. 29.  Consequently, the ALJ concluded that Gibson would be able to tolerate a "low stress" work environment (without the need to miss more than three days of work per month) if he were to stop using drugs and alcohol.  R. 19-29.

In his letter of March 23, 2009, Dr. Rubin stated that while Gibson's "[d]rug and alcohol use" was "not a primary cause of his disability," it had nevertheless played "a significant secondary role in exacerbating his bipolar disorder."  R. 247.  The Court acknowledges that the probative value of Dr. Rubin's statement was limited, since he did not even know that Gibson had been hospitalized in February 2008 because of a suicide attempt attributable to cocaine use.  R. 280.  Without that critical piece of information, Dr. Rubin was ill-suited to render an opinion as to whether Gibson's substance abuse was "material" to his inability work.  Nonetheless, Dr. Rubin's opinion, though uninformed, was still competent medical evidence entitled to some

consideration.  *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992).  Dr. Frank opined

that even a minimal amount of stress could trigger a relapse of Gibson's bipolar disorder.  R.

293.  This opinion was not expressed by reference to drug or alcohol abuse.  R. 293.  In addition,

Gibson testified at the hearing that work-related stress had caused him to quit his job on April 1,

2007, even though he had not been consuming drugs or alcohol during the previous few years.

R. 63-64.  The opinions of Dr. Rubin and Dr. Frank, when coupled with Gibson's testimony,

constituted evidence of non-materiality, thereby precluding a finding of "materiality" based

*solely* on Gibson's failure to satisfy his burden of proof.  Therefore, the ALJ was permitted to

make a finding of "materiality" only on the basis of conflicting medical evidence.  *Sklenar*, 195

F.Supp.2d at 700-701.

     In determining that Gibson would be able to tolerate "low stress" work if he were to stop

abusing substances, the ALJ relied on a consultative report supplied on April 9, 2008, by Dr.

Douglas Schiller.  R. 22.  Dr. Schiller, a non-examining medical consultant, opined that Gibson

had "the ability to meet the basic demands of competitive work on a sustained basis despite the

limitations caused by his impairment."  R. 187.  The ALJ gave "substantial weight" to Dr.

Schiller's opinion on the ground that it was "consistent with the record when the claimant was

not abusing drugs."  R. 22.  The ALJ's analysis, however, overlooks the fact that Dr. Schiller

never rendered an opinion as to whether drug or alcohol use was "a contributing factor material

to" Gibson's disability.  Dr. Schiller did not believe Gibson to be "disabled" in the first place.

Indeed, he reported that Gibson had no "marked" limitations.  R. 185-186.  The United States

Court of Appeals for the Third Circuit looks with skepticism upon administrative decisions

which credit the opinion of a non-examining medical consultant over a conflicting opinion

rendered by a treating or examining physician.  *Brownawell v. Commissioner of Social Security*,

554 F.3d 352, 357 (3d Cir. 2008).  The opinion of a non-examining medical consultant is entitled to even *less* weight when it does not even speak to the precise issue in dispute.  *Sklenar*, 195 F.Supp.2d at 701-705.

It must be acknowledged that the record contains evidence that Gibson's substance abuse has exacerbated his bipolar disorder.  Dr. Rubin admitted as much, and he evidently did not even know that Gibson had been hospitalized thirteen months earlier because of a cocaine-induced suicide attempt.  R. 247, 280.  Nevertheless, as the United States Court of Appeals for the Fifth Circuit observed in *Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999), evidence that drug abuse exacerbates an individual's mental impairment "is not sufficient to imply the inverse."  The critical question is not whether Gibson's bipolar disorder and resulting functional limitations are fairly attributable to *past* substance abuse, but rather whether a *future* cessation of substance abuse would render him capable of engaging in substantial gainful activity.  *Brown*, 192 F.3d at 499.  Since Dr. Schiller's consultative opinion bore no relationship to that issue, it should not have been accorded "substantial weight" in the ALJ's materiality analysis.  *Sklenar*, 195 F.Supp.2d at 702, n. 5.

At the hearing, Gibson testified that he had not used cocaine during the previous three months, and that he had started to help his stepson with his homework during that period of time. R. 59-60.  The ALJ relied on this testimony in determining that Gibson's substance abuse was "a contributing factor material to" his disability.  R. 22.  The ALJ's reasoning, however, is unpersuasive.  The United States Court of Appeals for the Third Circuit has recognized that a claimant's ability to perform "limited household chores" cannot be equated with an ability to perform the duties of a full-time job on a sustained basis.  *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).  The fact that Gibson was able to provide limited assistance to a member of

his own household during a period of abstinence provides little support for a determination that he would be able to maintain a full-time job in the absence of substance abuse.

The Court acknowledges that a finding of materiality need not always be based on opinion evidence supplied by a medical source. *McGill*, 288 Fed.Appx. at 53. Nevertheless, the evidence relied upon by the Commissioner in support of a materiality finding must be sufficiently probative to outweigh the evidence of non-materiality presented by the claimant. *Sklenar*, 195 F.Supp.2d at 700-705. The evidence relied upon by the ALJ in this case was simply not "substantial" enough to outweigh Gibson's countervailing evidence of non-materiality. Consequently, the ALJ's finding of materiality is not "supported by substantial evidence." 42 U.S.C. § 405(g).

In light of the foregoing analysis, the Commissioner's decision cannot stand. The only remaining question is whether an immediate award of benefits is proper, or whether a remand for further administrative proceedings is warranted. A judicially-ordered award of benefits is called for only where the record has been fully developed, and where the evidence contained in the record clearly points in favor of a finding that the claimant is entitled to benefits. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). That standard is not met in this case. As noted earlier, Dr. Rubin's opinion of non-materiality was uninformed. He acknowledged in his own report that he did not have access to Gibson's psychiatric treatment records, and that he did not know whether Gibson had been hospitalized because of his bipolar disorder. R. 280. He may have had a different opinion concerning the issue of materiality if he had known that Gibson had been hospitalized for a cocaine-induced suicide attempt in February 2008. R. 146. In addition, the documentary record in this case is very sparse. Although Gibson was apparently hospitalized from August 27, 2008, through September 18, 2008, the record contains no evidence concerning

the reasons for that hospitalization. R. 265. It is not clear to what extent (if any) Gibson's need for inpatient treatment was attributable to substance abuse. Moreover, no consultative medical examination was conducted for the purpose of identifying the limitations that would remain with Gibson if he were to cease abusing drugs and alcohol. Such an examination would be very helpful in a situation such as this, in which the record does not contain an appropriate analysis of the claimant's impairments with a specific focus on the issue of materiality.[11] *Brown*, 192 F.3d at 499; *Sklenar*, 195 F.Supp.2d at 705-706. For all of these reasons, further development of the record is needed.

## VI. Conclusion

At the hearing, Edelman testified that an individual who needed to miss more than three days of week per month, and who could not handle any amount of work-related stress, would be incapable of performing the duties of jobs existing in the national economy. R. 70-71. While the record contains evidence that Gibson's bipolar disorder was exacerbated by his substance abuse, it is devoid of evidence specifically linking the "disabling" limitations referenced by Edelman to Gibson's continued use of drugs and alcohol. Further development of the record is needed to determine whether Gibson's substance abuse is "a contributing factor material to" his inability to work. Accordingly, the Court will deny the Commissioner's motion for summary judgment,

---

[11] The Court does not mean to suggest that the Commissioner is required to conduct a consultative medical examination on remand. The propriety of such an examination is committed to the discretion of the Commissioner. 20 C.F.R. §§ 404.1519a-404.1519b, 416.919a-416.919b. The lack of a consultative examination report is merely one factor weighing against a determination that the record is sufficiently "developed" to warrant an immediate award of benefits. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). Nothing in this opinion should be construed to mean that a consultative examination of Gibson is *mandated*. Indeed, the submission of additional documentary evidence (such as that concerning Gibson's second hospitalization) may shed sufficient light on the issue of materiality to make a consultative examination pointless. It will be the prerogative of the Commissioner to determine how to proceed during the course of the upcoming administrative proceedings.

deny Gibson's motion for summary judgment to the extent that it requests an award of benefits, and grant Gibson's motion for summary judgment to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further proceedings. The administrative decision of the Commissioner will be vacated, and the case will be remanded to him for further proceedings consistent with this opinion. An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Dated:
cc:      All Registered ECF Counsel and Parties

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| **LOREN ERIC GIBSON,** ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 10-392** |
| ) | **Electronically Filed** |
| **v.** ) | |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| **Defendant.** ) | |


## ORDER OF COURT

**AND NOW**, this 21st day of September, 2010, for the reasons set forth in the

foregoing memorandum opinion, IT IS HEREBY ORDERED that the Defendant's Motion for

Summary Judgment (*Document No. 9*) is **DENIED**, and that the Plaintiff's Motion for Summary

Judgment (*Document No. 7*) is **DENIED** to the extent that it requests an award of benefits but

**GRANTED** to the extent that it seeks a vacation of the administrative decision of the

Commissioner of Social Security, and a remand for further administrative proceedings.  In

accordance with the fourth sentence of 42 U.S.C. § 405(g), the decision of the Commissioner of

Social Security is hereby **VACATED**, and the case is remanded to him for further proceedings

consistent with the foregoing memorandum opinion.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Dated:
cc:      All Registered ECF Counsel and Parties